UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| FS GiiKER Technology Co. Ltd.,<br><br>        Plaintiff,<br><br>v.<br><br>THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A,<br><br>        Defendants. | Civil Action No. 1:25-cv-25129-PCH |

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS**

Plaintiff FS GiiKER Technology Co. Ltd. ("Plaintiff" or "GiiKER") respectfully submits this Reply Memorandum of Law in further support of its Motion to Dismiss Defendants' Counterclaims. (D.E. 97.) Defendants' Opposition (D.E. 105) does not salvage their Counterclaims. Instead, it confirms what the Motion already demonstrated: Defendants are using their Counterclaims as a collateral attack on Plaintiff's filing and prosecution of this action and on the Court's injunctive relief—despite the fact that the liability issues have already been tried and decided and permanent injunctive relief has already been entered. (D.E. 79; D.E. 81.) The Counterclaims should be dismissed.

**ARGUMENT**

**I.     Defendants' "Prematurity" and "Jurisdiction" Arguments Are a Red Herring and Do Not Prevent Dismissal.**

Defendants lead with the assertion that Plaintiff's Motion is "premature" because Defendants filed a notice of appeal, and Defendants claim this Court is divested of jurisdiction to

address the Counterclaims. (Defs.' Opp. at 7–8.) That argument overreaches the narrow divestiture principle and misstates controlling Eleventh Circuit law.

A notice of appeal divests a district court of jurisdiction only over "those aspects of the case involved in the appeal," not the entire action. *Griggs v. Provident Consumer Disc. Co.,* 459 U.S. 56, 58 (1982). The Eleventh Circuit has reiterated that point in the interlocutory-appeal context: "when a party brings an interlocutory appeal, the district court retains jurisdiction to proceed with portions of the case not related to the appeal." *Johnson v. 3M Co.,* 55 F.4th 1304, 1309 (11th Cir. 2022). Defendants' Opposition does not grapple with that rule; instead, it cites cases standing for the basic proposition that a district court cannot alter or reconsider the particular order on appeal. (Defs.' Opp. at 7–8 (citing *Shewchun* and *Tovar-Rico*).) That is not what Plaintiff asks this Court to do.

Plaintiff's Motion does not seek to modify the Permanent Injunction, revisit the liability findings, or interfere with appellate review. It seeks to dismiss Counterclaims that are legally defective on their face and—most importantly—functionally redundant and/or barred as a matter of law. Dismissing those Counterclaims does not "decide" the appeal; it simply prevents Defendants from using state-law tort labels and duplicative declaratory counts to relitigate issues already tried and decided, and from expanding this post-trial case into a collateral dispute about litigation conduct.

Defendants also suggest this Court should refrain from ruling for "judicial economy" until the appeal is resolved. (Defs.' Opp. at 7–8.) That is backwards. The efficient course—consistent with Rule 1—is to narrow the case now and prevent the parties from being dragged into needless motion practice, discovery, and satellite litigation on claims that cannot proceed as a matter of law. Defendants' requested delay would do the opposite: it would keep legally defective Counterclaims

alive solely as leverage and as a platform for re-argument, while damages proceedings and compliance issues are proceeding.

Finally, Defendants invoke a footnote from the Court's liability order as purported support for postponing dismissal. (Defs.' Opp. at 8.) But the fact that the Court noted counterclaims could be addressed later "if necessary" does not mean counterclaims must survive a Rule 12 challenge, and it certainly does not immunize them from dismissal where (as here) the Court's post-trial rulings and permanent injunctive relief render Defendants' Counterclaims legally untenable.

## II.  Counts I–III (Declaratory Relief) Remain Moot, Redundant, and an Improper Attempt to Relitigate Liability.

Defendants argue their declaratory counts for non-infringement, invalidity, and unenforceability remain "live" because Defendants have appealed. (Defs.' Opp. at 8–9.) That argument misses the point. The relevant question is whether these Counterclaims present a justiciable "case or controversy" and whether they serve any legitimate, non-duplicative purpose in this action. They do not.

The Court has already tried the liability issues and ruled for Plaintiff. (D.E. 79.) The Court then entered permanent injunctive relief—expressly finding that Plaintiff "has established actual success on the merits." (D.E. 81.) Counts I–III ask this Court to declare the opposite. That is not an "actual controversy" requiring declaratory relief; it is a request for reconsideration in the guise of counterclaims. The Declaratory Judgment Act does not provide an independent cause of action; it requires an actual, immediate, real controversy. *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 127 (2007). Once the Court has adjudicated infringement and entered permanent injunctive relief, Defendants' demand for declarations of "non-infringement," "invalidity," and "unenforceability" adds nothing to the case and cannot be used as a second merits proceeding.

3

Defendants' "appeal keeps it alive" theory would mean any losing party could keep redundant declaratory counts pending indefinitely as an "insurance policy" against a future reversal—regardless of the Court's adjudication. That is not how declaratory jurisdiction works. Defendants' remedy is the appeal they have already noticed—not duplicative counterclaims in the same district-court action seeking declarations inconsistent with the Court's existing rulings.

Defendants also attempt to trivialize Plaintiff's redundancy argument as "beyond Rule 12(b)(6)." (Defs.' Opp. at 9.) It is not. A declaratory claim that seeks no relief other than a ruling on issues already adjudicated (or fully adjudicable as defenses) fails to state a claim for which relief can be granted and should be dismissed. Courts routinely dismiss such claims as redundant and improper. And here, redundancy is not an abstract procedural complaint; it goes directly to justiciability and to whether Defendants are attempting to relitigate what the Court has already decided.

### III. Defendants Cannot Evade Florida's Litigation Privilege by Recasting Their Claims as "Marketplace Communications."

Defendants next argue that Plaintiff "overstates" Florida's litigation privilege because some of their allegations involve communications with Amazon, payment processors, and customers that Defendants characterize as "outside" court proceedings. (Defs.' Opp. at 14.) That argument is both legally and factually misleading.

Florida's absolute litigation privilege is broad. It applies to "any act occurring during the course of a judicial proceeding" so long as it has some relation to that proceeding, and it applies to all causes of action—whether common law or statutory. *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Ins. Co.,* 639 So. 2d 606, 608 (Fla. 1994); *Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*, 950 So. 2d 380, 384 (Fla. 2007). Critically, the privilege extends not just to defamation; it bars tort claims premised on litigation conduct—

4

including claims for tortious interference and similar theories—because those claims are precisely the type of collateral litigation Florida law seeks to prevent. *See, e.g., Green Leaf Nursery v. E.I. DuPont de Nemours & Co.,* 341 F.3d 1292, 1302 (11th Cir. 2003) (applying Florida's litigation privilege to bar state-law claims arising from litigation-related conduct).

That is exactly what Defendants' Counterclaims do. They are premised "largely on Plaintiff's filing and prosecution of this action" and Plaintiff's pursuit of injunctive relief. (See generally Counterclaims, D.E. 83-2*; see also* Defs.' Opp. at 7–12.) Rebranding those allegations as "marketplace" activity does not change that they are litigation-centered claims. Communications to a platform to implement, comply with, or enforce a Court order—including an order restraining marketplace accounts and requiring removal or disabling of infringing listings—are not free-floating commercial torts. They are part and parcel of the judicial proceeding and the Court's remedial process. Florida privilege doctrine exists to prevent precisely this kind of after-the-fact tort suit over litigation conduct.

Defendants rely on *DelMonico v. Traynor*, 116 So. 3d 1205 (Fla. 2013) and *Grippa v. Rubin*, No. 23-11714, 2025 WL 997347 (11th Cir. Apr. 3, 2025). (Defs.' Opp. at 14.) Neither case supports Defendants' sweeping attempt to convert litigation conduct into tort claims here. *DelMonico* addressed a narrow scenario: alleged defamatory statements made during *informal, out-of-court witness interviews* and explained that those statements were not protected by absolute privilege in the same manner as statements made in court or in formal litigation filings. 116 So. 3d at 1217. *DelMonico* did not overrule *Levin* or *Echevarria;* it reaffirmed the core rule of absolute privilege for litigation conduct and carved a limited boundary in the context of informal witness interviews. It does not stand for the proposition that communications made to effectuate court-

5

ordered restraints and removals (or to implement injunctive relief against online infringers) are outside the privilege.

*Grippa* likewise involved distinct facts and (as Defendants present it) emphasizes that the privilege analysis is tethered to whether the alleged conduct is part of the litigation process or is an independent extrajudicial campaign. But even taking *Grippa* at face value, it does not salvage Defendants' Counterclaims here because Defendants' pleaded theory remains a collateral attack on Plaintiff's prosecution of this case and the Court's injunction-related relief. Indeed, the gravamen of their Counterclaims is that Plaintiff should not have filed the case, should not have obtained *ex parte* relief, and should not have pursued restraints and compliance measures through the Court. Consequently, Defendants cannot plead around that by pointing to the practical reality that enforcing a Court order against online sellers necessarily involves communications to the platforms and processors that control the relevant accounts.

In short, Defendants' Opposition does not narrow their Counterclaims to non-privileged conduct; it attempts to preserve tort claims that arise from Plaintiff's litigation activity and court-ordered relief. Florida's litigation privilege bars those claims.

**IV.  Even If Privilege Did Not Apply, Defendants Still Fail to Plead Plausible Claims Under Counts IV–IX.**

Defendants' Opposition offers broad conclusions about plausibility but does not cure the basic element and pleading failures identified in Plaintiff's Motion.

> **A.  *Tortious Interference Still Fails for Lack of a Specific Business Relationship and for Lack of Plausible "Unjustified" Interference*.**

Defendants argue they adequately pled a business relationship with "Amazon and their customers." (Defs.' Opp. at 9–10.) Florida law requires more than the generalized assertion that a business has customers or a relationship with the public at large. To state a tortious interference

6

claim, a plaintiff must allege an identifiable business relationship with specific parties, not a "mere hope" of future transactions. Ethan Allen, Inc. v. Georgetown Manor, Inc., 647 So. 2d 812, 814–15 (Fla. 1994).

Defendants do not identify any specific customer relationship that was allegedly interfered with, nor do they plead facts showing a protected, existing relationship that was disrupted by Plaintiff—as opposed to the consequences of Defendants' own infringement and the resulting Court orders. Conclusory references to "customers" and "sales" are not enough under *Ethan Allen* and *Twombly/Iqbal.*

Nor do Defendants plausibly allege "unjustified" interference. Their Counterclaims are built on the assertion that Plaintiff's enforcement was wrongful. But the Court has already found liability for copyright infringement and entered permanent injunctive relief. (D.E. 79; D.E. 81.) Where a plaintiff acts to protect its rights and to obtain court-ordered relief, Florida law recognizes justification and privilege that defeats an interference theory. Defendants cannot plausibly plead that Plaintiff's pursuit of injunctive relief was "unjustified" while simultaneously litigating an appeal of the very order and judgment confirming Plaintiff's rights.

### B. Abuse of Process Still Fails Because Defendants Do Not Plead a Misuse of Process After Issuance for an Improper Purpose.

Defendants' abuse-of-process theory is still rooted in the same core grievance: Plaintiff filed this case and obtained *ex parte* relief. (Defs.' Opp. at 10–11.) That is not abuse of process. Abuse of process requires (among other things) an improper use of process after it issues—some act in the use of the process that is not proper in the regular course of the proceeding. *Bothmann v. Harrington,* 458 So. 2d 1163, 1169 (Fla. 3d DCA 1984). Allegations that a party filed suit, sought injunctive relief, and pursued enforcement are not enough.

Defendants do not plead any post-issuance misuse of judicial process that is separate from the process itself. They complain about the existence and effect of the Court's TRO/asset restraints; that is an objection to the Court's relief, not a tort.

> C. *Wrongful Injunction/Restraint Fails as a Matter of Law in Light of Plaintiff's Success on the Merits.*

Defendants contend their wrongful injunction/restraint claim is viable because the Court required a bond and because Defendants have appealed. (Defs.' Opp. at 11.) But Defendants cite no authority that permits a "wrongful injunction" tort claim to proceed where the plaintiff has already prevailed on liability and obtained permanent injunctive relief.

In this Circuit, the touchstone for wrongful-injunction damages is whether the defendant was "wrongfully enjoined," meaning whether the enjoined party "had the right all along to do what it was enjoined from doing." *Milan Express, Inc. v. Averitt Express, Inc.,* 208 F.3d 975, 979 (11th Cir. 2000). The Court's post-trial rulings are inconsistent with Defendants' premise. The Court found Defendants liable for infringement and entered permanent injunctive relief based on Plaintiff's actual success on the merits. (D.E. 79; D.E. 81.) Defendants therefore cannot plausibly allege they had "the right all along" to use Plaintiff's copyrighted photographs in their listings. Milan Express forecloses that theory.

Defendants' appeal does not transform a legally foreclosed claim into a plausible one. The Court's judgment and injunction remain operative unless stayed, and Defendants' speculative hope of reversal does not state a present claim for wrongful injunction.

> D. *FDUTPA and Unfair Competition Cannot Be Based on Litigation Conduct and Still Lack the Required Trade-or-Commerce Nexus.*

Defendants argue their FDUTPA and unfair competition claims are based on "trade or commerce" because they involve communications to platforms and customers. (Defs.' Opp. at 11–

8

12.) But Defendants' Counterclaims remain litigation-centered. They challenge Plaintiff's petitioning activity—filing suit, seeking ex parte relief, and enforcing court orders—as "unfair" or "deceptive." That is not the type of consumer-oriented marketplace conduct FDUTPA was designed to regulate, and it is precisely the type of collateral litigation Florida's litigation privilege bars. *Echevarria*, 950 So. 2d at 384 (litigation privilege applies to statutory claims, including those premised on litigation conduct).

Defendants also fail to plead FDUTPA with the required clarity as to the "deceptive act," causation, and actual damages in a manner that is plausible in light of the Court's merits findings. Their narrative presumes Plaintiff lacked rights and misled everyone. The Court has already determined otherwise.

        E.     *Fraud Still Fails Under Rule 9(b) and for Lack of Reliance.*

Defendants' fraud claim remains deficient under Rule 9(b). They insist they have pled "who, what, when, where, and how." (Defs.' Opp. at 12–13.) But the Counterclaims are still built on broad accusations that Plaintiff "misrepresented" infringement, publication dates, and harms, without pleading the required particularized facts for each statement, each speaker, and each instance of reliance. The Eleventh Circuit requires strict compliance with Rule 9(b). *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001).

Defendants also fail on reliance. Defendants' Opposition cites third-party reliance concepts, arguing reliance can occur through intermediaries. (Defs.' Opp. at 12.) But Defendants' pleaded theory is not that Plaintiff made a misrepresentation to Defendants (or their agent) and Defendants relied on it; it is that Plaintiff made statements to the Court and/or platforms and Defendants suffered downstream harm. That is not a traditional fraud theory and does not satisfy Florida's reliance requirement. Defendants' attempt to stretch "agent/intermediary" reliance

9

principles to cover platforms enforcing court orders (or evaluating rights claims) does not cure the pleading defects.

> V. The Counterclaims Are Shotgun Pleadings, and Defendants' "Leave to Amend" Request Is Improper and Futile;

Defendants do not meaningfully dispute that the Counterclaims incorporate all preceding allegations into each count. (Defs.' Opp. at 13.) That is a hallmark of shotgun pleading condemned by the Eleventh Circuit. *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321–23 (11th Cir. 2015). Defendants' attempt to minimize that flaw as merely "technical" ignores the practical effect: it makes it impossible to determine which allegations support which elements of which claim.

Defendants cite *Vibe Micro* to argue they should receive at least one opportunity to replead. (Defs.' Opp. at 13.) But even if the Court were inclined to allow amendment for form, amendment would be futile here because the core defects are legal, not stylistic: the declaratory counts are moot/redundant in light of the Court's adjudication; the state-law claims are barred by litigation privilege; and the remaining elements fail as a matter of law in light of the Court's post-trial findings and permanent injunctive relief. Where amendment would be futile, dismissal with prejudice is appropriate.

Separately, Defendants' "request" for leave to amend—tucked into an opposition brief without a proposed amended pleading—should be denied as procedurally improper. The Eleventh Circuit has repeatedly held that a party must file a proper motion for leave and provide the proposed amendment; an embedded request in a memorandum is insufficient. *See Newton v. Duke Energy Fla., LLC*, 895 F.3d 1270, 1277 (11th Cir. 2018); *Atkins v. McInteer*, 470 F.3d 1350, 1361–62 (11th Cir. 2006).

**VI.     Conclusion**

Defendants' Opposition confirms that the Counterclaims are exactly what Plaintiff described in its Motion: a collateral attack on Plaintiff's prosecution of this case and on the Court's orders, packaged as declaratory counts and state-law torts. The Court has already tried and decided liability and entered permanent injunctive relief. (D.E. 79; D.E. 81.) Defendants' Counterclaims are moot, redundant, barred by Florida's litigation privilege, and independently deficient under Rule 12(b)(6) and Rule 9(b). Plaintiff respectfully requests that the Court grant Plaintiff's Motion to Dismiss (D.E. 97) and dismiss Defendants' Counterclaims with prejudice.

Dated: January 23, 2026
      Aventura, Florida

By: */s/ Yanina Zilberman*
Yanina Zilberman
Robert Garson
Michael Steinmetz (admitted pro hac vice)
GS2Law PLLC
20801 Biscayne Blvd., Suite 506
Aventura, FL 33180
Telephone: 305-780-5212
Email: rg@gs2law.com; yz@gs2law.com

Michael Steinmetz *(admitted pro hac vice)*
Garson Segal Steinmetz Fladgate LLP
225 Broadway, 37th Floor,
New York, NY 10007
Telephone: (212) 380-3623
E-mail: ms@gs2law.com

*Attorneys for Plaintiff*